

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**
10/25/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JOHN MICHAEL McMAHAN,** | § | **Case No. 12-34980** |
| Debtor | § | |
| | § | |
| | § | **Chapter 13** |

**MEMORANDUM OPINION REGARDING PEARLAND STATE BANK'S**
**MOTION TO DISMISS**
[Main Case Doc. No. 32]

**I.  INTRODUCTION**

The dispute at bar involves what is, in bankruptcy parlance, referred to as a "Chapter 24."

In 2010, Pearland State Bank (the Bank) negotiated with John Michael McMahan (the Debtor)

and agreed to a Chapter 11 plan of reorganization (the Chapter 11 Plan).  Upon the Chapter 11

Plan's confirmation, and after ten months of plan payments, the Debtor defaulted.  Rather than

modifying the Chapter 11 Plan under § 1127(e) of the Bankruptcy Code[1], the Debtor filed a

Chapter 13 petition (the Pending Chapter 13 Case) and a proposed plan in the Pending Chapter

13 Case (the Proposed Chapter 13 Plan).  The Proposed Chapter 13 Plan, if confirmed, would

change the payment schedule that the Debtor had negotiated with the Bank in the Chapter 11

case (the Chapter 11 Case).

The Bank has filed a motion to dismiss the Pending Chapter 13 Case for serial filing (the

Motion to Dismiss), arguing that the Chapter 13 petition was not filed in good faith under

§§ 1307 and 1325(a)(3).  [Main Case Doc. No. 32].  The Debtor admits that he was in default to

the Bank under the Chapter 11 Plan, and that he filed the Pending Chapter 13 Case to stop the

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §)
refers to a section in 11 U.S.C., which is the United States Bankruptcy Code unless otherwise noted. Further, any
reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

Bank from going forward with its scheduled foreclosure sale—a right which the Bank had bargained for in the Chapter 11 Case, and which was expressly set forth in the Chapter 11 Plan. [Bank's Ex. No. 3, Ex. B, at 12].   However, the Debtor argues that he filed this second bankruptcy petition in good faith, and that therefore his Chapter 13 Case should not be dismissed.

The Court has decided to issue this Memorandum Opinion for three reasons.  First, the Court wishes to clarify the provisions of § 1127.  Since the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), a different plan modification procedure is allowable for individual debtors in Chapter 11, as opposed to that for corporate or partnership debtors.   Specifically, post-confirmation an individual debtor may continue to modify his plan even if the plan has been substantially consummated.[2]  In the dispute at bar, the Debtor failed to make his scheduled payments under the Chapter 11 Plan.  Even though the Chapter 11 Plan was confirmed and substantially consummated, the Debtor could nevertheless have invoked § 1127 to seek to modify his Chapter 11 Plan.  Instead, the Debtor chose to file a Chapter 13 petition and propose a new plan.  In doing so, the Debtor has attempted to circumvent the procedures put in place by BAPCPA for modifying confirmed Chapter 11 plans of individuals.

A second reason for issuing this Opinion is to underscore that an individual debtor receives a discharge in Chapter 11 only upon completion of plan payments or upon a showing of cause.  Therefore, the Court wants to emphasize the following:  until the debtor receives a discharge in his Chapter 11 case, he is barred from filing a second bankruptcy petition and

---

[2] In contrast, a corporation or partnership whose confirmed Chapter 11 plan has been substantially consummated may not modify the plan.  11 U.S.C. § 1127(b); *Enter. Fin. Grp v. Curtis Mathes Corp.*, 197 B.R. 40, 44 (Bankr. E.D. Tex. 1996).

proposing a new plan even if his Chapter 11 Case has been closed following confirmation of the plan. Two simultaneous reorganization cases in which no discharge has been granted constitutes an abuse and manipulation of the Code. Thus, the fact that the Debtor has not yet received his discharge in the Chapter 11 Case requires dismissal of the Pending Chapter 13 Case. This result is necessary, as an alternative rule would leave creditors vulnerable to adjudication of the same debt under two concurrent cases and plans.

Finally, the Court publishes this Opinion to emphasize that it is extending the rationale articulated in the Fifth Circuit's decision of *Elmwood Dev. Co. v. General Elec. Pension Trust (In re Elmwood),* 964 F.2d 508 (5th Cir. 1992), which analyzed serial filings of Chapter 11 petitions. The principles articulated in *Elmwood* for Chapter 22 petitions (i.e., the filing of a second Chapter 11 petition after having already obtained a confirmed plan in a prior Chapter 11 case that is still being effectuated) should apply equally to Chapter 24 petitions (i.e., the filing of a Chapter 13 petition after having already obtained a confirmed Chapter 11 plan in a prior Chapter 11 case that is still being effectuated). The *Elmwood* case and its holding may therefore be analyzed in both contexts.

Based upon the entire record, the Court now makes the following written Findings of Fact and Conclusions of Law pursuant to FED. R. CIV. P. 52, as incorporated into adversary proceedings by FED. R. BANKR. P. 7052. The Court concludes that the Motion to Dismiss should be granted, and the Pending Chapter 13 Case should be dismissed with prejudice. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

3

## II. FINDINGS OF FACT

1. On April 6, 2010, the Debtor filed a Chapter 11 petition. [Chapter 11 Doc. No. 1]. The Debtor is in the business of buying, fixing up and selling cars, including classic automobiles. [Tape Recording, 10/01/12 Hearing at 3:47:20–3:47:35 p.m.]. This case was assigned Case No. 10-32978 (the Chapter 11 Case). The Honorable Karen K. Brown, United States Bankruptcy Judge for the Southern District of Texas, was assigned the Chapter 11 Case. *See* [Chapter 11 Doc. No. 5].

2. The Debtor owns two pieces of real property located in Houston, Texas. One of these tracts is referred to as the Beltway 8 Property; this is unimproved real estate. [Tape Recording, 10/01/12 Hearing at 3:46:30–3:46-37 p.m.]. The other is referred to as the Greens Road Property; this is improved real estate on which the Debtor's business is operated. [*Id.* at 3:46:37–3:47:24 p.m.].

3. The Bank has a valid first lien on both the Beltway 8 Property and the Greens Road Property. [Bank Ex. No. 4 at 10–11]. The Bank has had a lending relationship with the Debtor for approximately seven years. [Tape Recording, 10/01/12 Hearing at 4:33:35–4:33:45, 4:37:00–4:37:45 p.m.]. The relationship has been rocky; the Debtor has repeatedly made late payments; and the Debtor has failed to pay all ad valorum taxes on the Beltway 8 Property and Greens Road Property in violation of the deed of trust held by the Bank. [*Id.*].

4. The Debtor initiated the Chapter 11 Case to stop the Bank from foreclosing on the Beltway 8 Property and the Greens Road Property. [Tape Recording, 10/01/12 Hearing at 3:47:20–3:47:88 p.m.].

5.  Alan Gerger (Gerger) represented the Debtor in the Chapter 11 Case.  [*Id.* at 3:48:45–3:49:20 p.m.].  Gerger is a seasoned lawyer who is well-versed in prosecuting Chapter 11 cases.

6.  David Smith (Smith) represented the Bank in the Chapter 11 Case.  Smith filed a Notice of Appearance on May 7, 2010 [Chapter 11 Doc. No. 9], and was actively involved throughout the Chapter 11 Case; for example, as the docket sheet for the Chapter 11 Case reflects, Smith made numerous appearances and filings. *See, e.g.*, [Chapter 11 Doc. Nos. 9, 52 & 57].

7.  On January 19, 2011, in the Chapter 11 Case, Judge Brown confirmed the Debtor's First Amended Chapter 11 plan (already defined herein as the Chapter 11 Plan). [Chapter 11 Doc. No. 79].

8.  Smith, on behalf of the Bank, and Gerger, on behalf of the Debtor, conducted negotiations leading up to confirmation of the Chapter 11 Plan.  The negotiated and agreed terms of the Chapter 11 Plan provided, among other things, for the following treatment of the Bank:

    a.  The Bank had an allowed secured claim of $630,079.74, secured by the Beltway 8 Property and the Greens Road Property, as well as by all equipment owned by the Debtor;

    b.  The Bank's secured claim would be evidenced by a promissory note for $630,079.74 (the Note), bearing interest at 10.5% per annum, to be repaid in monthly installments as follows: (1) beginning on February 1, 2011 and continuing through and including December 1, 2011, a monthly payment for $2,756.60; (2) on January 1, 2012, a payment for $280,000.00; (3) beginning

5

February 1, 2012 and continuing each month thereafter through and including May 1, 2012, a monthly payment in the amount of $2,756.60; and (4) one final balloon payment due on June 1, 2012. On January 10, 2011, the Debtor did indeed execute the Note, and delivered it to the Bank.

c.  The Debtor would also execute a Deed of Trust and Security Agreement (the Deed of Trust) to secure the Note, with the liens to attach to the Beltway 8 Property and the Greens Road Property. The Debtor did indeed execute this instrument and deliver it to the Bank, which recorded it in the Real Property Records of Harris County, Texas. The Deed of Trust provided in Section 3.3 the following: "Upon the occurrence of an uncured Event of Default as provided in the Note, [the Bank] shall have the option, without declaring the entire [i]ndebtedness due, to proceed with foreclosure in satisfaction of such Default. . ."

d.  The Debtor would pay delinquent ad valorum taxes on the Bank's collateral.

e.  The Debtor would provide the Bank with proof of payment of the ad valorum taxes.

[Bank's Ex. No. 3].

9.  The Chapter 11 Plan, in the section entitled "Means for Execution of the Plan," represented, among other things, to the Court and the Debtor's creditors the following:

> The Reorganized Debtor shall continue to conduct his ordinary course of business which relates to the automobile industry with a special expertise in the classic automobile business . . . The Debtor's ordinary course includes, but is not limited to, buying, selling, trading, appraising, exchanging, refurbishing and renovating high-end property such as cars, boats, planes, trailers and also the parts, accessories and services associated with such property (collectively, the "Transactions"). He also brokers such transactions by purchasing property for his clients with client funds (the "Client Funded Transactions"). Additionally, the Debtor accepts property to sell on consignment (the "Consignment

6

Transactions"). The Reorganized Debtor will use the Net Proceeds from the Transactions, Client Funded Transactions and Consignment Transactions to pay his living expenses and Allowed Claims.

The Reorganized Debtor will also attempt to sell and/or refinance the Beltway 8 Property and the Greens Road Property and use any equity from the sale of those properties to pay Allowed Claims in accordance with this Plan.

[Bank's Ex. No. 3, at 9].

10. The "Effective Date" of the Chapter 11 Plan was "the thirtieth day (30th) day following Confirmation becoming a Final Order." [Bank's Ex. No. 3]; [Chapter 11 Doc. No. 79–1, at 2]. The order confirming the Chapter 11 Plan was entered on the docket on January 19, 2011. [Chapter 11 Doc. No. 79]. The docket sheet for the Chapter 11 Case reflects that no appeal of the confirmation order was taken. Accordingly, the Effective Date of the Chapter 11 Plan was 30 days following January 19, 2011—which means that the Effective Date was February 18, 2011.

11. After the Chapter 11 Plan was confirmed, the Debtor did, in fact, continue to operate his business and did generate income. Further, the Debtor made efforts, through a broker, to sell the Beltway 8 Property and the Greens Road Property [Chapter 11 Doc. No. 26]; however, the Debtor has received no offers on either of these tracts. [Tape Recording, 10/1/12 Hearing at 4:07:57–4:09:29 p.m.]. The Debtor made all of the monthly payments due under the Note (and the Chapter 11 Plan) from February 2011 to December 2011. Additionally, the Debtor also made payments to other allowed claim holders under the Chapter 11 Plan. [*Id.*].

12. The Debtor failed to make the payment of $280,000.00 due to the Bank on January 1, 2012. [*Id.*].

13. Because the Debtor failed to make the payment of $280,000.00, under the terms of the Chapter 11 Plan the Bank proceeded to post the Beltway 8 Property and the Greens Road Property for foreclosure. [*Id.*].

14. The Debtor offered to pay the Bank the sum of $20,000.00 in exchange for the Bank refraining from foreclosing, with the due date for the payment of $280,000.00 extended to June 1, 2012. [*Id.* at 4:13:09–4:20:45 p.m.]. The Bank agreed to the Debtor's offer, and thus forbore from foreclosing. [*Id.*].

15. In addition to failing to make the $280,000.00 payment to the Bank on January 1, 2012, the Debtor also failed to provide proof to the Bank that the Debtor had paid the 2011 ad valorum taxes due on the Beltway 8 Property and the Greens Road Property. The Debtor was required to provide such proof by January 31, 2012 pursuant to Article II, Section 2.1 E of the Deed of Trust that was incorporated into the Chapter 11 Plan and was attached thereto as an exhibit. [Bank Ex. No. 3]. Accordingly, with respect to the Bank, the Debtor had defaulted under the Chapter 11 Plan in two respects: (1) he failed to make the $280,000.00 payment as of January 1, 2012[3]; and (2) he failed to provide to the Bank proof that he had paid the ad valorum taxes on the Beltway 8 Property and the Greens Road Property due by January 31, 2012.

16. In the wake of the Bank forbearing from conducting the foreclosure sale, the Debtor attempted to sell the Beltway 8 Property in order to generate sufficient cash to make the payment of $280,000.00 by June 1, 2012. In fact, the Debtor retained CB Richard Ellis to serve as the broker for selling this particular tract. [Tape Recording, 10/01/12 Hearing

---

[3] Indeed, at the hearing on the Motion to Dismiss, the Debtor testified that the requirement under the Chapter 11 Plan to pay $280,000.00 to the Bank on January 1, 2012 was the major reason why he fell into default under the Chapter 11 Plan. [Tape Recording, 10/01/12 Hearing at 4:47:15-4:49:03 p.m.].

at 4:47:20–4:48:30 p.m.]. The Debtor was unsuccessful. The Debtor was therefore unable to make the $280,000.00 payment by June 1, 2012. [*Id.* at 4:48:40–4:48:50 p.m.].

17. Because the Debtor failed to make the $280,000.00 payment by June 1, 2012, the Bank posted the Beltway 8 Property and the Greens Road Property for foreclosure, with the foreclosure sale to take place on Tuesday, July 3, 2012. [Main Case No. 12-34980, Doc. No. 32, at 2].

18. On July 2, 2012, the Debtor filed a Chapter 13 petition initiating the Pending Chapter 13 Case before the undersigned judge. [Main Case Doc. No. 1]. The Debtor filed the Chapter 13 petition to stop the Bank's foreclosure. [Tape Recording, 10/01/12 Hearing at 3:48:05–3:48:15 p.m.].

19. In the Pending Chapter 13 Case, the Debtor has most of the same creditors as he did in the Chapter 11 Case, with one major exception. [Main Case Doc. No. 32, at 2]. At the beginning of the Chapter 11 Case, the Debtor did not have an obligation to Gerger.[4] However, at the beginning of the Pending Chapter 13 Case, the Debtor owed Gerger approximately $30,000.00 in attorney's fees relating to services rendered by Gerger in the Chapter 11 Case. [Tape Recording, 10/01/12 Hearing at 3:49:00–3:49:45 p.m.].

---

[4] There is also one additional new debt in the Chapter 13 Case, which was not listed in the Chapter 11 Case. This is a secured outstanding claim of $736.72 to Atascocita Community Improvement Association for unpaid HOA taxes on the Debtor's homestead. This new debt is *de minimus*, and accounts for far less than 1% of the total outstanding secured debt listed by the Debtor in the Chapter 13 Case.

Additionally, in the Chapter 11 Case, the Debtor listed three outstanding obligations to Leo Vasquez, who is the Tax Assessor for Harris County; the Chapter 13 Case lists this obligation as "Harris County," rather than "Leo Vasquez, Tax Assessor." The debt, however, is the same.

Only one claim listed in the Chapter 11 Case is not included in the Chapter 13 Case—an unsecured debt to Howard Lorch for $1,200.00.

20. On July 12, 2012, the Debtor filed a proposed plan in the Pending Chapter 13 Case (already defined herein as the Proposed Chapter 13 Plan).  [Bank's Ex. No. 6]; [Main Case Doc. No. 16].  The Proposed Chapter 13 Plan's treatment of the Bank is as follows:

    a.  Upon confirmation, the Debtor will "immediately surrender and abandon" the Beltway 8 Property "and agree to immediately turn over and/or vacate the property, and the [Bank] may take any action allowed under applicable law with respect to this property without further order of the Court."

    b.  The Proposed Chapter 13 Plan is silent as to how much credit will be given against the debt owed to the Bank under the Note as a result of the Debtor's surrendering the Beltway 8 Property.  Testimony and representations made at the hearing on the Motion to Dismiss suggest that the Debtor might file a motion to value the Beltway 8 Property so that a specific value can be determined and credited against the debt owed to the Bank.

    c.  Although the Debtor will surrender the Beltway 8 Property, the Debtor will still be responsible for all ad valorem tax liens on this property as of the date of the filing of the Pending Chapter 13 Case petition, with these taxes (which the Proposed Chapter 13 Plan represents to be $30,000.00) to be paid over 36 months bearing interest at the rate of 4.75% per annum.

    d.  The Debtor will retain title to the Greens Road Property, and the Bank's lien will remain in effect.  The Debtor will pay the Bank the amount of $95,278.00, plus interest of 4.75% per annum, to be amortized over 36 months.[5]

---

[5] The record is unclear as to why the Proposed Chapter 13 Plan has the lien held by the Bank on the Greens Road Property valued at $95,278.00.  The Note which the Debtor executed pursuant to the Chapter 11 Plan confirmed in the Chapter 11 Case is secured by both the Greens Road Property and the Beltway 8 Property.  [Bank's Ex. No. 3,

    e.  With respect to the Greens Road Property, the Debtor will be responsible for all ad valorum tax liens on this property as of the date of the filing of the Pending Chapter 13 Case petition, with these taxes (which the Proposed Chapter 13 Plan represents to be $47,380.00) to be paid over 36 months bearing interest at the rate of 12.00% per annum.

[Bank's Ex. No. 6]; [Main Case Doc. No. 16].[6]

### III. CREDIBILITY OF WITNESSES

Three witnesses testified at the hearing on the Motion to Dismiss: (1) the Debtor; (2) John Rizzo, the Executive Vice President of the Bank; and (3) Randall Ferguson, the President of the Bank. The Court finds that Messrs. Rizzo and Ferguson gave very credible testimony and the Court therefore gives substantial weight to their testimony. The Court finds that the Debtor, for the most part, answered the questions posed to him in a forthright manner, although there were certain instances where his testimony was vague and contradictory. For example, at one point, he testified that he has not tried seriously to sell the Beltway 8 Property; but later, he testified that he has tried selling this tract. *Compare* [Tape Recording, 10/01/12 Hearing at 4:02:00–4:04:34], *with* [*Id.* at 4:47:14–4:49:14 p.m.]. Overall, the Court gives some weight to the Debtor's testimony.

---

Ex. A]. Thus, there is one, and only one Note; and it is secured by both properties. Because there has not yet been a determination of the value of the Beltway 8 Property for the purposes of calculating the reduction in the balance of the Note by the surrender of the Beltway 8 Property, there necessarily can be no representation from the Debtor at this time that the balance of the Note, after taking into account the surrender of the Beltway 8 Property, is $95,278.00.

[6] On October 1, 2012, this Court held a hearing on the Motion to Dismiss, and took the matter under advisement. Nine days later, the Debtor filed a proposed amended plan to be prosecuted by substitute counsel, which the Debtor would probably argue treats the Bank more favorably than his initial plan. [Main Case Doc. No. 54]. Nevertheless, for purposes of ruling on the Motion to Dismiss, this Court focuses on the initial plan, as that was the "live" plan on the date of the hearing, which was introduced as an exhibit. The Court notes that even if it did consider the amended plan in its analysis, it would not change its decision to grant the Motion to Dismiss.

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This particular dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O) and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that an "[a]dversary [p]roceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

### B. Constitutional Authority to Enter a Final Order

*Stern v. Marshall* sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. 131 S. Ct. 2594 (2011). Therefore, this Court has a duty to question its constitutional authority to enter a final order for any matter brought before it.

The Court concludes that the facts in the pending dispute are distinguishable from those in *Stern*, and that this Court has the authority to enter a final order on the Motion to Dismiss. In *Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity, or invalidity, of the claim held by the defendant. *Id.* Here, the Bank seeks relief based upon the Debtor's successive bankruptcy filings, thereby alleging violations of §§ 1127(b), 1307 and 1325(a)(3). As these issues and the requested relief are based on express provisions of the Code—not state law—this dispute is easily

12

distinguishable from *Stern*.  This Court is, therefore, constitutionally authorized to enter a final order on the Motion to Dismiss.

###    C. The Status of the Chapter 11 Case Is Relevant in Considering Whether to Dismiss the Pending Chapter 13 Case.

The starting point in analyzing whether to grant the Motion to Dismiss is to determine the status of Debtor in the Chapter 11 Case.  Specifically, has the Debtor received a discharge?

Prior to the passage of Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), confirmation of a plan discharged an individual Chapter 11 debtor under the provisions of 11 U.S.C. § 1141(d).  *In re Necaise*, 443 B.R. 483, 2010 WL 3294692, at *3 (S.D. Miss. Aug. 20, 2010).  BAPCPA, which became effective on October 17, 2005, amended the provisions in § 1141(d).  Under the new § 1141(d)(5), individual Chapter 11 debtors are treated differently than corporate debtors.  *In re Belcher*, 410 B.R. 206, 214 n.7 (Bankr. W.D. Va. 2009). When an individual debtor now files a Chapter 11 petition, the debtor will not be granted a discharge until completion of all payments under the debtor's confirmed Chapter 11 plan.[7] *United States v. White*, 466 F.3d 1241, 1246 n.10 (11th Cir. 2006).  Thus, while the estate property revests in the debtor upon plan confirmation under §1141(b), confirmation alone does not result in the individual debtor's discharge.  The debtor has to make all of his plan payments before receiving a discharge.  11 U.S.C. § 1142(d)(5)(A); *In re Necaise*, 2010 WL 3294692, at *3 (footnote omitted).[8]

In the dispute at bar, the Debtor has not completed all of his payments under the Chapter 11 Plan in the Chapter 11 Case.  [Finding of Fact No. 17].  Though the Debtor began making

---

[7] BAPCPA did <u>not</u> change the law regarding discharge for corporate and partnership debtors in Chapter 11.  The law regarding Chapter 11 entity debtors is that they receive a discharge upon confirmation of the plan. 11 U.S.C. § 1141.
[8] This BAPCPA change to § 1141(d)(5) operates to make an individual debtor's discharge in Chapter 11 more like a Chapter 13 case.  A Chapter 11 individual debtor, like a Chapter 13 debtor, must wait until all payments are made before receiving a discharge from the court.  *In re Beyer*, 433 B.R. 884, 887 (Bankr. M.D. Fla. 2009).

payments to the Bank in February 2011 and continued to make those payments until December 2011, he has not completed *all* of the Chapter 11 Plan payments. [Finding of Fact Nos. 12 & 17]. Rather, under the terms of the Chapter 11 Plan, the Debtor agreed to the following: (1) to make a payment of $280,000.00 to the Bank on January 1, 2012; (2) to make a series of monthly payments of $2,756.60 to the Bank from February 1, 2012 until May 1, 2012; (3) to make a final payment to the Bank on June 1, 2012; and (4) to pay all delinquent ad valorem taxes on the Bank's collateral. [Finding of Fact No. 8]. Because he failed to complete his payments under the Chapter 11 Plan, the Debtor has not received a discharge. *See Necaise*, 2010 WL 3294692, at *3 (footnote omitted).

Even though the Debtor has failed to complete his payments under the Chapter 11 Plan, under BAPCPA, a debtor may, in some instances, seek a discharge *before* completion of the plan payments under § 1142(d)(5). Here, however, the Debtor has not sought such relief—perhaps because discharge before completion of payments is extraordinary, *see Berwick*, 394 B.R. at 461, and is permissible only after "notice and a hearing." *See In re Sheridan*, 391 B.R. 287, 290 (Bankr. E.D.N.C. 2008). By requiring notice and hearing, the Code mandates that creditors be given a warning that the debtor plans to seek a discharge prior to completion of the plan payments. *Id.*

No such notice or hearing was requested or held in the Chapter 11 Case. Rather, after confirmation of the Chapter 11 Plan, this Court, at the Debtor's request [Chapter 11 Doc. No. 97], entered a conditional decree ordering that "the case of the above named debtor is closed subject to being reopened to provide the debtor with a discharge." [Chapter 11 Doc. No. 106]. Thus, the Debtor has not yet received his discharge in the Chapter 11 Case, but it is clearly contemplated that he will receive a discharge in the future.

D.  **The Pending Chapter 13 Case Should Be Dismissed For Two Separate and Independent Reasons.**

1.  <u>Because the Debtor Has Not Received His Discharge in the Chapter 11 Case, He is Barred from Prosecuting the Pending Chapter 13 Case.</u>

As the Debtor has failed to receive a discharge in the Chapter 11 Case, the question then is whether such failure bars the Debtor from prosecuting the Pending Chapter 13 Case?  At first blush, the answer would seem to be that he is not barred.  Under the "single estate rule," "a debtor cannot maintain simultaneous bankruptcy cases." *Baltrotsky v. K. H. Funding, Inc. (In re Baltrotsky)*, No. Civ. A DKC2004-2643, 2004 WL 2937537, at *4 (D. Md. Dec. 20, 2004) (quoting *Assocs. Fin. Servs. Corp. v. Cowen (In re Cowen)*, 29 B.R. 888, 894 (Bankr. S.D. Ohio 1983)).  The rule is simple and categorical; property "cannot be an asset of '[two] estates simultaneously.'"  *See In re Studio Five Clothing Stores, Inc.,* 192 B.R. 998, 1006 (Bankr. C.D. Cal. 1996) (quoting *Grimes v. United States (In re Grimes)*, 117 B.R. 531, 536 (B.A.P. 9th Cir. 1990) (original alteration omitted)).

Here, when the Chapter 11 Plan was confirmed, the property of the Debtor's estate revested in the Debtor.[9]  With the property's revestment in the Debtor, therefore, there was no longer any estate in the Chapter 11 Case; and, therefore, there could *not* be two estates simultaneously in existence when the Debtor filed his Chapter 13 petition.  For this reason, the single estate rule is *arguably* inapplicable to the Pending Chapter 13 Case at bar; and therefore the Pending Chapter 13 Case would seem to be entirely appropriate.

Appearances are, however, deceiving.  The Second Circuit has declared that even under the single estate rule "there is universal agreement among [courts] that where a debtor files for

---

[9] The property revested pursuant to article IV of the Chapter 11 Plan, which states as follows:  "Under this Plan, on the Confirmation Date, title to all assets and properties owned by [the Debtor] will revest in the Reorganized Debtor, free and clear of all liens, claims and encumbrances except as provided for in this Plan."  [Bank's Ex. No. 3].

[bankruptcy relief] and then files [a second petition] before receiving a *discharge* in the original case, that [the second case] is a *nullity*." *Turner v. Citizens Nat'l Bank of Hammond (In re Turner)*, 207 B.R. 373, 378 (2d Cir. 1997) (quoting *In re Kosenka*, 104 B.R. 40, 46 (Bankr. N.D. Ind. 1989)) (emphasis added). It is the *discharge* that matters, and the absence of two estates is irrelevant. Without a discharge in the first case, courts should refuse to hear the second.

This conclusion is supported by the Supreme Court's holding in *Freshman v. Atkins*, 269 U.S. 121 (1925). In *Atkins*, a debtor was denied a discharge in one bankruptcy proceeding; yet, while that case remained open, the debtor filed a second petition seeking to discharge both the debts scheduled in the first case, as well as some new debts incurred after the filing of the first case. The Supreme Court only allowed the second petition with respect to the *new* debts; as the Supreme Court stated, "pendency of the first application precluded a consideration of the second in respect of the same debts." *Id.* at 122. The Court analogized this situation to the common law plea of "prior suit pending," which does not tolerate "two suits at the same time for the same cause." *Id.* at 123.

Even courts who have held that there is no per se prohibition of simultaneous bankruptcy cases, consider discharge to be the dividing line. Pre-BAPCA, the Ninth Circuit B.A.P., in *In re Grimes*, held that even though the debtors' first Chapter 11 case technically remained open, their receipt of their discharge in that case entitled them to file a second petition under another chapter as long as they met the requirements of that chapter. 117 B.R. at 536. The key to the court's rationale was "discharge"; the fact that discharge had been granted in the initial case played a key role in the court's decision to permit the second case to proceed. *Id.*

Nothing since BAPCPA has changed that conclusion. Rather, in 2009—or four years after BAPCPA's implementation—a court in Virginia declared:

> "A debtor is precluded from maintaining simultaneous bankruptcy
> proceedings with respect to the same debt. [The debtor] had not received a
> discharge in this confirmed [first case] prior to filing his [second petition], and he
> scheduled his debt to [the same debtors] in both proceedings. [The debtor's]
> Second Case . . . should therefore be dismissed for violation of the principle set
> forth in *Atkins*.

*In re Baker*, 399 B. R. 162, 170 (Bankr. W.D. Va. 2009). The *Atkins* principle therefore remains

relevant; discharge is still the key.

Here, the Debtor is an individual, not a corporation. He filed his second bankruptcy

petition—i.e., the Chapter 13 petition—on July 2, 2012. [Finding of Fact No. 19]. On that date,

the Debtor had not—and still has not—received a discharge in the Chapter 11 Case. Yet, as in

*Atkins*, he scheduled the same assets, liabilities and creditors in the Schedules filed in the

Pending Chapter 13 Case, with only one major exception: there is now a claim for attorney's fee

due to Gerger (i.e., his Chapter 11 attorney) from the Chapter 11 Case. [Finding of Fact No. 20].

Thus, the effect of the Pending Chapter 13 Case is to create "two suits at the same time for the

same cause." *Atkins*, 269 U.S. at 123. This result is insupportable, and without receipt of his

discharge in the Chapter 11 Case, the Pending Chapter 13 Case must be dismissed.

     2. <u>Because the Pending Chapter 13 Case Violated the Good Faith Rule for Serial
       Filings, It Should be Dismissed.</u>

There is a second and completely independent basis for dismissing the Pending Chapter

13 Case: it is a serial filing, which the Debtor is not prosecuting in good faith.

The Code itself does not limit all serial filings, and there is no provision which expressly

prohibits a debtor's ability to prosecute successive Chapter 11 and Chapter 13 cases. The mere

fact that a debtor has filed a Chapter 11 bankruptcy petition does not *per se* prohibit a subsequent

Chapter 13 petition.

In *Johnson v. Home State Bank*, the Supreme Court addressed the issue of serial filings, specifically considering the serial filing of Chapter 13 and Chapter 7 petitions (a so-called Chapter 20 petition).   In *Johnson*, the respondent argued that the individual debtor filed his Chapter 20 petition "in an effort to evade the limits that Congress intended to place" on serial filing.   *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991).   The Supreme Court disagreed.   It noted that "Congress has expressly prohibited [certain] forms of serial filings."   *See id.*; 11 U. S. C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing).   However, the Court found no "like prohibition on serial filings of Chapter 7 and Chapter 13 petitions."   This convinced the Supreme Court that "Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief."   *Johnson*, 501 U.S. at 87.

Applying *Johnson*, the Fifth Circuit in *Elmwood* extended this rationale to the serial filing of Chapter 11 petitions (a so-called Chapter 22 petition).   *In re Elmwood*, 964 F.2d at 510.   A corporate debtor filed the first Chapter 11 petition on the eve of foreclosure of its main asset. Yet, after substantially consummating the Chapter 11 plan, the debtor filed a second Chapter 11 petition.   *Id.*   This was a novel issue for the court, but using the *Johnson* rationale, the Fifth Circuit concluded that a Chapter 22 petition is not per se invalid, as Congress had not specifically enumerated such a prohibition in the Code.   *Id.* at 511.

The dispute at bar does not involve either a Chapter 20 or Chapter 22 scenario; nevertheless, the rationale articulated by the Supreme Court and Fifth Circuit in *Johnson* and *Elmwood* is equally applicable to the successive Chapter 11 and Chapter 13 petitions filed here (a so-called Chapter 24 petition).   First, "serial filing" is a term of art; it is not limited to Chapter

22 and Chapter 20 cases. Instead, it encompasses a broad spectrum of repetitive case filings under an assortment of chapters of the Code. Moreover, as the Supreme Court reasoned in *Johnson*, the specifically prohibited forms of serial filings enumerated within the Code do not encompass or address the serial filing of a Chapter 24 petition. Accordingly, this Court concludes that a Chapter 24 petition is not per se barred by the Code. *See Johnson*, 501 U.S. at 87.

Yet, as the Fifth Circuit noted in *Elmwood*, inherent in *any* bankruptcy case is a fundamental prerequisite: a debtor must file his petition in good faith. 964 F.2d at 510. This constraint protects both the integrity of the bankruptcy system and the rights of creditors. *Id.* A court may consider the potential for abuse in every case, whether on motion of an interested party, or sua sponte. *See* 11 U.S.C. § 105(a); *Elliott v. Sutton*, No. 12-514, 2012 U.S. Dist. LEXIS 77333, at *10 (W.D. La. June 4, 2012). Upon consideration, the court may then issue any order that is necessary or appropriate to prevent an abuse of the bankruptcy process. 11 U.S.C. § 105(a); *Elliott*, 2012 U.S. Dist. LEXIS 77333, at *10.

By requiring good faith, the Code also prevents abusive serial filings. Both *Johnson* and *Elmwood* addressed this issue, and as these courts concluded, the good faith requirement applies to both Chapter 20 and Chapter 22 contexts. *See Johnson*, 501 U.S. at 87; *In re Elmwood*, 964 F.2d at 510. In Chapter 13 cases, for example, a bankruptcy court may confirm a Chapter 13 plan "only if the court finds, inter alia, that 'the plan has been proposed in *good faith*.'" *Johnson*, 501 U.S. at 87; *see also* § 1325(a)(3). Similarly, under § 1129(a)(3), Chapter 11 plans must be proposed in good faith; "lack of good faith," on the other hand, "constitutes cause for dismissal." *In re Elmwood*, 964 F.2d at 510. The good faith requirement is therefore meant "to be adequate protection from abusive serial filings." *Id.* at 511.

The good faith requirement in the Chapter 24 context is an issue of first impression before this Court. However, Chapter 24 petitions are not uniquely immune from abuse or manipulation, and even before *Johnson*, courts had recognized by "national consensus" that serial filings required good faith. *Id.* To prevent abuse in the Chapter 24 context, this Court therefore finds that the good faith requirement applies to a Chapter 24 petition. This conclusion merely unites the pre-*Johnson* collective understanding with the tenet articulated in *Johnson* and *Elmwood*.

Having concluded that good faith is required in the Pending Chapter 13 Case, this Court must determine if the Debtor has exhibited good faith. There is no precise test for determining good faith; in making this determination, courts may consider any factors that evidence "intent to abuse the judicial process" or factors that show "a petition was filed to delay or frustrate legitimate efforts of a secured creditor to enforce his rights." *MacElvain v. I.R.S.*, 180 B.R. 670, 673 (Bankr. M.D. Ala. 1995). A court must conduct an "on-the-spot evaluation" of "a collation of factors." *Id.* The analysis is therefore case-by-case specific, and does not depend on a particular universal test. *Id.*

In *Johnson*, the Supreme Court remanded without articulating any specific factors that might be included in a good faith analysis. *Johnson*, 501 U.S. at 88. The Fifth Circuit, however, has described some factors. They include whether: (1) the debtor has one asset, which is a tract of real property; (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is the subject of a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems involve essentially a dispute between the debtor and a secured creditor which can be resolved in a pending state court action; and (6) the timing of the debtor's filing evidences an

intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. *See Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072–73 (5th Cir. 1986)[10]; *see also In re Scotia Pacific Co., LLC*, 508 F.3d 214, 223 (5th Cir. 2007) (applying the *Little Creek* factors post-BAPCPA).

Each of these circumstances, if present, weighs against a finding of good faith; moreover, there is no requirement that all factors be present, and the Court may place more weight on one factor than another. *See In re Elmwood*, 964 F.2d at 510 ("A collation of factors, rather than any single datum, controls resolution of the issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each case.") (citing *In re Little Creek*, 779 F.2d at 1072 & 1074); *see also In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 168 (Bankr. S.D. Tex. 1989) ("The Court in *Little Creek Development* set forth a number of factors which in various combinations are likely to be found in a case lacking the element of good faith in filing."). Applying these factors to the Pending Chapter 13 Case, the Court concludes that the Debtor did not file his Pending Chapter 13 Case in good faith.

### a. The Debtor has More Than One Real Property Asset and Personal Property Assets.

Contrary to the debtor in *Little Creek*, who had only a "single" asset (undeveloped real estate) 779 F.2d at 1070, the Debtor here owns not only two separate and distinct tracts (one of which is improved property), but also owns certain personal property. In his Schedules, the Debtor lists the value of the Greens Road Property as $950,000.00, the value of the Beltway 8 Property as $575,000.00, and, additionally the Debtor lists the value of his personal property

---

[10] While *Little Creek* concerned a motion to lift stay, as opposed to a motion to dismiss, the good faith analysis articulated in *Little Creek* logically applies to a motion to dismiss as well. In fact, *Elmwood*, which analyzed the bankruptcy court's decision to dismiss, cites extensively to *Little Creek. See, e.g., In re Elmwood*, 964 F.2d at 510 ("Lack of good faith in the filing of a Chapter 11 bankruptcy petition constitutes cause for dismissal . . .") (citing *In re Little Creek*, 779 F.2d at 1072)).

assets as $74,123.00. [Bank Ex. No. 5, at 1–2, 10]. The Debtor's personal property assets are by no means *de minimus*. Under these circumstances, this factor weighs in favor of a finding of good faith.

### b. The Debtor has Several Unsecured Creditors Whose Claims are Significant in Relation to the Claims of the Bank.

The amount of debt owed to the Debtor's unsecured creditors is fairly significant, weighing in favor of a finding of good faith. *Id.* In the Pending Chapter 13 Case, the Debtor lists secured debt of $858,765.72 and unsecured debt of $123,303.38. [Bank's Ex. No. 5]. While the Bank holds a clear majority of the outstanding claims—81% of the outstanding secured debt, and 71% of the total debt—more than a *de minimus* of both the secured and unsecured debt is still held by other creditors.[11] This factor weighs slightly towards a finding of good faith.

### c. The Debtor has Few Employees.

As the Debtor owns and operates a business called World Wide Classic, this factor is relevant to the good faith of the Pending Chapter 13 Case. In the Pending Chapter 13 Case Schedules, the Debtor indicates that he has owned World Wide Classic for 40 years. [Bank's Ex. No. 5 at 26]. The Debtor also included an exhibit with his Schedules entitled "Itemized Business Expenses." While the Debtor listed $13,426.00 in business expenses per month, none of the expenses relate to payroll or employees. [*Id.* at 28]. Thus, as the Debtor has few, if any, employees, this factor weighs against a finding of good faith. *See In re Little Creek Dev. Co.,* 779 F.2d at 1072–73.

---

[11] This is true even if this Court also accounts for the ad valorum tax debt, which the Bank will have to pay off to assume a priority lien on the Beltway 8 Property and Greens Road Property.

### d. The Property is the Subject of a Foreclosure Action as a Result of Arrearages on the Debt.

Under the Chapter 11 Plan, the Debtor attempted to sell the Beltway 8 Property and the Greens Road Property in order to make his payments to the Bank. [Finding of Fact No. 17]. The Debtor was unsuccessful, and as a result, the Bank exercised its bargained-for rights under the Chapter 11 Plan, [Finding of Fact No. 8], scheduling a foreclosure sale of both the Beltway 8 Property and the Greens Road Property. [Finding of Fact No. 13].

To stop this action, the Debtor first approached the Bank, negotiating an extension of the January 1, 2012 balloon payment deadline in exchange for the payment of $20,000.00. [Finding of Fact No. 14]. The Bank agreed. However, when the Debtor was again unable to make the $280,000.00 balloon payment—now due on June 1, 2012—the Bank once more exercised its right to foreclose. It posted the Beltway 8 Property and the Greens Road Property for a July 3, 2012 foreclosure sale. [Finding of Fact No. 17].

In response, the Debtor filed the Pending Chapter 13 Case. [Finding of Fact No. 18]. The Debtor initiated this Case on the eve of the Bank's foreclosure, and as the Debtor admitted at the hearing, this filing was purposely intended to stop the Bank's sale of the Beltway 8 Property and Greens Road Property. [*Id.*].

Under *Little Creek*, this factor does not consider the Debtor's intent, despite the Debtor's argument that these actions do not evidence any intent to file the Pending Chapter 13 Case in bad faith. The *Little Creek* test merely asks whether the Debtor's property is the subject of a foreclosure action as a result of arrearages on the debt. 779 F.2d at 1072–73. Here, the answer to this question is clearly yes. As a result, this factor weighs against finding that the Debtor filed the Pending Chapter 13 Case in good faith.

e.  **The Debtor's Financial Problems Involve Essentially a Dispute Between the Debtor and the Bank Which Can be Resolved in a State Court Action or in the Chapter 11 Case.**

As demonstrated above, the Bank holds 81% of the outstanding secured debt, and 71% of the total debt. *See* [Bank's Ex. No. 5 at 16–23]. If this Court also accounts for the ad valorum tax debt, which the Bank will have to pay off to protect its lien on the Beltway 8 Property and Greens Road Property, the Bank holds 83% of the total secured claims and 72% of the total outstanding debt. [*Id.* at 16–18]. Moreover, the Bank has a lien on virtually all of the Debtor's assets and therefore if the Bank forecloses, the Debtor will lose his entire business. All of these circumstances support a finding that the Debtor's financial problems arose from his dispute with the Bank—making it very much a two-party dispute. Yet, because there is no pending state court suit—or even one that is threatened—this *Little Factor*, at first glance, favors a finding of good faith.

However, if the rationale for this factor is to avoid duplicative and obstructive litigation, then like a pending state court action, a conditionally open Chapter 11 case is significant to the *Little Creek* analysis.[12] Without a discharge, the Debtor's Chapter 11 Case remains conditionally open, and modification of the Chapter 11 Plan is available. The Chapter 11 Case, like a pending state court action, therefore provides a sufficient arena for resolution of the dispute between the Debtor and the Bank.[13] As the Fifth Circuit noted in *Little Creek*, "[r]esort to the protection of [Chapter 13] is not proper under these circumstances," as "[n]either the bankruptcy courts nor the creditors should be subjected to the costs and delays of a [Chapter 13] proceeding under such

---

[12] The Debtor's Chapter 11 Case is "conditionally open" because, as the decree orders, "the case of the above named debtor is closed subject to being reopened to provide the debtor with a discharge." [Chapter 11 Doc. No. 106].

[13] In fact, the Chapter 11 Case not only provides a *sufficient* arena for resolution of this two-party dispute, but the *only* arena. As discussed below, modification of an individual debtor's Chapter 11 plan *must* occur according to the express Chapter 11 procedures described in §§ 1127(e) and (f).

24

conditions." 779 F.2d at 1073. Therefore, as the Chapter 11 Case remains conditionally open and modification can be pursued, this factor, on balance, weighs against the Debtor's good faith.

> ### f. The Timing of the Debtor's Filing Evidences an Intent to Delay or Frustrate the Legitimate Efforts of the Bank to Enforce Its Rights.
>
>> #### i. *The Timing of the Debtor's Filing was Not the Result of Unanticipated Changed Circumstances.*

In *Elmwood*, the Fifth Circuit primarily focused its good faith inquiry on the last *Little Creek* factor, considering whether the second petition was "filed to contradict the initial bankruptcy proceeding," thereby frustrating the debtor's creditors. *In re Elmwood*, 964 F.2d at 511 n.9; *see also In re McCormick Rd Assoc.*, 127 B.R. 410 (Bankr. N.D. Ill. 1991) (concluding that the purpose of the good faith/bad faith analysis is to determine whether the debtor filed to abuse the judicial process and thereby delay or frustrate the creditors' rights). In *Elmwood*, the debtor filed two successive Chapter 11 petitions. 964 F.2d at 509–10. The second case involved no new assets, no new creditors, and no other substantive changes from the first case. *Id.* Rather, the second case was filed as the debtor's creditors prepared to foreclose on the property relating to the confirmed plan in the first case. Despite the substantial similarity between the two Chapter 11 cases, the debtor argued that there were sufficient "unanticipated changed circumstances" to justify a successive filing. *Id.* at 512. For example, in the first case, the debtor voluntarily bargained with its creditors to sell the underlying secured property by a certain date. However, due to a depressed real estate market—which the debtor asserted was unanticipated—the debtor was unable to sell. *Id.* at 512–13.

The Fifth Circuit held that the debtor's inability to sell was not a "changed circumstance", nor was this condition "unforeseen." *Id.* Rather, the debtor was aware of the depressed real estate market at the time of his first Chapter 11 petition. *Id.* The Fifth Circuit

therefore found that the initiation of the second case was merely a manipulative attempt by the debtor to modify the terms of the confirmed plan in the first case, and thereby undermine the Code. *Id.* at 511.

Applying *Elmwood*, this Court finds that unanticipated changed circumstances *could* justify a Chapter 24 petition; "a second petition would not necessarily contradict the original proceedings because a legitimately varied and previously unknown factual scenario might require a different plan to accomplish the goals of bankruptcy." *Id.* at 511–12. Nevertheless, in applying the *Elmwood* test to the Pending Chapter 13 Case, this Court concludes that there are no unforeseen changed circumstances.

Under the Chapter 11 Plan, the Debtor made a legitimate attempt to sell both the Beltway 8 Property and the Greens Road Property in order to make his payments to the Bank. [Finding of Fact No. 17]. The fact that the Debtor was unable to sell the Beltway 8 Property and the Greens Road Property, however, was not unpredictable. The Debtor testified that he has listed the Beltway 8 Property for sale "off and on" since 2003—well before the petition date in the Chapter 11 Case (i.e., April 6, 2010). During that time—2003 to 2010—the Debtor *never* received a written offer on the Beltway 8 Property. [Tape Recording, 10/01/12 Hearing at 4:03:27-4:05:44 p.m.]. Consequently, the Debtor should have anticipated this same outcome when negotiating and obtaining confirmation of the Chapter 11 Plan.

Furthermore, as of the date of the Pending Chapter 13 Case, circumstances had not unexpectedly changed; it continues to remain unlikely that the Debtor will be able to sell the Beltway 8 Property and the Greens Road Property. In fact, the Debtor has ceased his attempts to sell the Beltway 8 Property. [Finding of Fact No. 21]. In his Chapter 13 Plan, he has proposed to "immediately surrender and abandon" the Beltway 8 Property to the Bank. [*Id.*]. As in

*Elmwood*, the Debtor's circumstances at the time of the Pending Chapter 13 Case were neither unforeseen, nor was there a significant change from the circumstances at the time of the Chapter 11 Case.   Instead, the Pending Chapter 13 Case is an effort to avoid the consequences of foreclosure expressly provided for in the Chapter 11 Plan upon default by the Debtor.

Finally, as the Pending Chapter 13 Case lists virtually the same creditors as in the Chapter 11 Case, it seems even more unlikely that circumstances have unexpectedly changed. [Finding of Fact No. 20].   The only major exception is the additional $30,000 debt for legal services related to the Chapter 11 Case, which the Debtor now owes to his attorney, Gerger.   All of the other creditors and assets remain fundamentally unchanged.   Rather than "unforeseen changed circumstances," the Pending Chapter 13 Case appears to be the result of the Debtor's manipulative attempt to modify the terms of the confirmed Chapter 11 Plan. *See In re Elmwood*, 964 F.2d at 511.

In sum, it is the Debtor's burden to show unforeseen changed circumstances, and the Debtor has wholly failed to meet this burden. *See In re Casa Loma Assocs.*, 122 B.R. 814, 818 (Bankr. N.D. Ga. 1991) (placing the burden on the debtor).

> ii. *The Debtor's Intent in Filing the Pending Chapter 13 Case was to Delay or Frustrate the Legitimate Efforts of the Bank to Enforce Its Rights.*

A case filed without any legitimate prospect of reorganization "serves as grounds to dismiss the filing." *See, e.g.*, *In re Brown*, 951 F.2d at 572; *In re Roxy Real Estate Co.*, 170 B.R. 571, 574 (Bankr. E.D. Pa. 1993).   Dismissal is permitted because this sort of bankruptcy case is one intended to delay or frustrate the legitimate efforts of the debtor's creditors.   In *Elmwood*, for example, the debtor was not attempting to reorganize, but was merely trying to impermissibly modify the confirmed Plan from the first case.   964 F.2d at 509–10.   Here, the Bank argues

similarly; that the Debtor is attempting to modify the Plan in the Chapter 11 Case after its substantial consummation. According to the Bank, the Debtor's Chapter 13 filing therefore evidences a motive to frustrate the Bank, with the Debtor "simply using the bankruptcy system as a means to stop the scheduled foreclosures and not as an avenue to reorganize." *In re Morgan*, No. 01-50250-11, 2001 Bankr. LEXIS 2254, *11–13 (Bankr. N.D. Tex. June 18, 2001).

Nevertheless, *Elmwood* is not entirely parallel to the case at bar. Elmwood Development Company was a corporate debtor. The Debtor here is not. Thus, while the *Elmwood* court focused on provisions applicable to corporations, the Debtor in the case at bar is not required to adhere to the same procedural rules.

For instance, in *Elmwood*, the court focused on the debtor's "impermissible purpose," finding that the second Chapter 11 petition was an attempt to avoid and circumvent § 1127(b)'s prohibition of plan modifications after substantial consummation in corporate Chapter 11 cases. 964 F.2d at 509–10. Since the passage of BAPCPA, however, the Code now differentiates between individual debtors and corporate debtors in Chapter 11. Under § 1127(e), "if the debtor is an individual, the plan may be modified at *any time* after confirmation of the plan but before the completion of payments." 11 U.S.C. § 1127(e) (emphasis added). Stated differently, whereas a corporate Chapter 11 debtor whose confirmed plan is substantially consummated may not modify the plan, an individual Chapter 11 debtor whose plan is substantially consummated[14] may modify the plan. Thus, the *Elmwood* court's analysis of § 1127(b) is not applicable to the Debtor's situation. Under § 1127(e), even though the Debtor's Chapter 11 Plan was substantially

---

[14] Substantial consummation occurs when: (1) all or substantially all of the property proposed by the plan has been transferred in accordance with the terms; (2) the debtor assumes the management of all or substantially all of the property dealt with by the plan; and (3) the debtor commences distribution under the plan. *See Enter. Fin. Grp.*, 197 B.R. at 44 (emphasis added).

28

consummated, the Debtor could have continued to modify the Chapter 11 Plan until he completed making his plan payments.

And, indeed, for individual debtors in Chapter 11, the Code clearly outlines a process and procedure for modification of a Chapter 11 plan. Under § 1127(f)(2), an individual debtor's Chapter 11 plan "as modified, shall become the plan only after there has been disclosure under § 1125 . . . notice and hearing, and such modification is approved." 11 U.S.C. § 1127(f)(2). Stated more directly, modification requires disclosure, notice, hearing and court approval. The Code therefore does not envision the filing of a Chapter 13 plan to effect a modification of a confirmed Chapter 11 plan. Such a procedure would be unnecessarily duplicative; it would allow a debtor to essentially restructure the same liabilities that have already been restructured in the Chapter 11 plan. Thus, while the Code permits modification of an individual debtor's confirmed Chapter 11 plan, this modification should be obtained through the procedures afforded by the Code. By filing the Pending Chapter 13 Case, the Debtor utterly failed to follow these procedures—hardly a hallmark of good faith.

Moreover, the Debtor filed his Chapter 13 petition on July 2, 2012 on the eve of the Bank's foreclosure on the Beltway 8 Property and the Greens Road Property. The Debtor admitted to this Court that his second petition was filed to stop the Bank's repossession. [Finding of Fact No. 18]. While this motive alone is not evidence of bad faith, *In re Little Creek Dev. Co.,* 779 F.2d at 1073 (internal citations omitted), the Debtor *also* chose to ignore § 1127(f)(2)'s notice and hearing requirements. Instead, he attempted to modify the Chapter 11 Plan by filing a Chapter 13 petition, and then proposing a Chapter 13 plan that materially changes the treatment of the Bank's claim under the Chapter 11 Plan. The Debtor's goal was not only to stop the Bank's bargained-for right to foreclose under the Chapter 11 Plan, *see* [Finding

29

of Fact No. 8], but also to stretch out the payments for an additional five years at a much lower interest rate than set forth in the Chapter 11 Plan. *Compare* [Bank's Ex. No. 3, Ex. A, at 1] (setting a fixed interest rate of 10.5% per annum, and stating that "[t]his Note is payable in full on June 1, 2012."), *with* [Bank's Ex. No. 6, at 6] (providing for payment to the Bank to occur over 36 months at a 4.75% interest rate).

The good faith requirement is meant to prevent this sort of delay, obfuscation and abuse of the bankruptcy process. *See In re Little Creek Dev. Co.,* 779 F.2d at 1071–72 ("the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights."). By permitting the Pending Chapter 13 Case to proceed, this Court would be allowing the Debtor to manipulate and bypass the explicit procedures of § 1127(e) and (f). This would not only violate the good faith rule, but would also be an overt disturbance of *Elmwood*'s conclusion and a complete disregard of BAPCPA's statutory changes applicable to individual Chapter 11 debtors. As the Fifth Circuit held, a violation of the good faith rule, which was "engineered to prevent abusive manipulation of the Bankruptcy Code," is appropriately remedied by dismissal. *Elmwood,* 964 F.2d at 513. Any other remedy would fail to "properly honor[]" the Code. *Id.*

In sum, even though the Debtor is permitted to modify the Chapter 11 Plan under § 1127(e) and (f), this was permissible within the Chapter 11 Case alone. As a result, the Pending Chapter 13 Case is both unnecessary—as no unforeseen changed circumstances have occurred— and frustrating, as it has delayed the Bank from its legitimate, bargained-for ability to foreclose. *See* [Finding of Fact No. 8]. Under the last *Little Creek* factor, the Debtor lacked good faith by seeking to prosecute the Pending Chapter 13 Case.

For the reasons set forth above, four of the six *Little Creek* factors weigh against a finding of good faith. Moreover, due to the Debtor's serial filing, this Court follows the example set by *Elmwood*, and places the most substantial weight on the last factor. Under these circumstances, this Court concludes that the Debtor has acted in bad faith in initiating the Pending Chapter 13 Case; the Pending Chapter 13 Case is dismissed with prejudice.

## V. Conclusion

The bankruptcy process is only fair when debtors comply with the Code. *See In re Jones*, 327 B.R. 297; *see also United States v. Cluck*, 87 F.3d 138, 140 (5th Cir. 1996). As such, an attempt to outwit the Code is both unfair and intolerable.

BAPCPA provided individual Chapter 11 debtors with a gracious and extensive system for modification of a confirmed Chapter 11 plan. Unlike a corporation or partnership in Chapter 11, individual debtors in Chapter 11 have the ability to modify a confirmed Chapter 11 plan at any time before completion of the plan payments, even if substantial consummation has occurred. Yet, here, the Debtor has attempted to circumvent these provisions. When unable to make the payments required under the Chapter 11 Plan, the Debtor chose not to seek approval of a modification of the Chapter 11 Plan, and chose not to give notice and a hearing to his creditors where they could voice their views. Rather he simply decided to jettison the Chapter 11 Plan's terms and file a Chapter 13 plan instead—a plan which materially changes the treatment of the Bank's secured claim as set forth in the Chapter 11 Plan.

With § 1127(e) and (f) available as a means for modification, the Debtor's choice is mystifying. It is also insupportable. Until the Debtor receives a discharge in the Chapter 11 Case, he is precluded from filing a second bankruptcy petition. Moreover, as the Debtor's filing of his Chapter 13 petition was a clear attempt to manipulate the Code and frustrate the legitimate

31

actions of the Bank in the Chapter 11 Case[15], the Debtor's prosecution of the Pending Chapter 13 Case is in bad faith.

For all of the foregoing reasons, the Court grants the relief sought in the Motion to Dismiss, and the Pending Chapter 13 Case will be dismissed with prejudice. The Court will issue a separate Order consistent with this Opinion.


Signed:   October 25, 2012

Jeff Bohm

Chief United States Bankruptcy Judge

---

[15] The Bank's voluntary attempt to work with the Debtor further demonstrates the Debtor's bad faith. The Bank negotiated with the Debtor to effectuate a confirmed Chapter 11 Plan. The Chapter 11 Plan included all of the necessary default and payment procedures. When the Debtor defaulted in January 2012, the Bank then went beyond its bargained-for agreement. Rather than foreclosing on the property, the Bank provided the Debtor with an additional six months to make the $280,000.00 payment due. [Finding of Fact No. 14]. This agreement with the Debtor was an immaterial change to the Chapter 11 Plan; it only affected *the Bank's* rights under the Chapter 11 Plan, and did not harm the rights of any of the Debtor's other creditors. As a result, the Bank allowed the Debtor to modify the Chapter 11 Plan *without* requiring that the Debtor seek notice and approval under § 1127. *See In re Cong. Sand & Gravel, LLC*, No. 10-37526, 2011 Bankr. LEXIS 3373, at *7 (Bankr. N.D. Tex. Sept. 2, 2011) (finding that the "modifications to the [p]lan . . . are immaterial modifications to the [p]lan, [if they] do not adversely affect any creditor or interest holder. . ."); *In re Viking Offshore USA, Inc.*, No. 08-31219-H3-11, 2010 WL 1544402, at *3 (Bankr. S.D. Tex. Apr. 19, 2010). Thus, the Bank worked generously with the Debtor, and attempted to provide him with a pathway to successful payment and performance under the Chapter 11 Plan. The Debtor's decision to prosecute the Pending Chapter 13 Plan—rather than attempt to modify the Chapter 11 Plan—is an ungrateful response to the Bank's efforts, and is in bad faith.